Thank you, your honors. May it please the court. I represent Mr. Lawrence Salisbury, who was and still is a resident of a mobile home park in Santa Monica. In 2015, when the incidents in this case occurred, the mobile home park was owned by the City of Santa Monica. Mr. Salisbury had lived at the mobile home park since 1974, since he was a teenager. I understand that's a disputed fact, but nevertheless it was a fact that my client supported with sworn testimony. In 2015, he requested of the City of Santa Monica an accommodation of his disability, and he suffered from- with respect to whether or not the city was going to agree to give him a lease, because I know there is a long dispute over whether or not he was properly there, and whether they would give him a lease. Are you asserting with respect to that decision making about whether to give him a lease or not give him a lease, that he was subject to disability discrimination? That is not our argument at all, your honor. Okay, I just want to agree. So it's just over the refusal to accommodate the parking space in number 58? That's correct, your honor. In this particular type of tenancy, no lease is required. Mr. Salisbury came in as a teenager, I think at the age of 13, when his parents got divorced, and his father lived in this mobile home park, and his mother lived also in the City of Santa Monica, not far away. So he lived there with his family since 1974. And in Santa Monica, where you have a rent-controlled jurisdiction, it really doesn't matter if a lease is renewed. Because of the way the law operates, once a lease expires, it may be 65 years old, but that will still be the lease that is in effect, because of the way rent control works. So, no, we've never argued that there was a discrimination in terms of failing to give him a lease. It is unnecessary for the purposes of this case, whether he had a lease or not. Pardon me, may I ask you this? Is it necessary that he have some sort of status or relationship of a tenant or a title to possession of the property, in order to have your claim regarding disability cognizable? No, it isn't, Your Honor, and let me explain... The City of Santa Monica owes everybody disability consideration, whether he is a homeless person, whether he is a homeless person, as long as he is in Santa Monica. Well, no, so long as he is in the United States, Your Honor. Oh, so as long as he is in the United States, the City of Santa Monica owes him a disability consideration. Yes, that's according to 42 U.S.C. 3604F. No particular relationship between the defendant and the plaintiff has to occur in order to impose upon the defendant the duty of granting a disability accommodation. Do you have any case that might suggest that? Yes, Your Honor, I have, well, a case, I have the plain language of the law. I didn't say no relation, but there is a relationship, and it's very broad. Well, let me ask you... 42, well... One of the languages of the relationship says that any person, whether or not he is a tenant, whether or not he is a tenant by any type of lease or implied tenancy, has a right to require a disability accommodation in the City of Santa Monica, because he happens to be alive and present in the City of Santa Monica. It's that he happens to be, well, first there's two layers, if I could get to it, Your Honor. First, he has to be alive and present in the rented house. And that is 42 U.S.C. 3604F.2. Well, a burglar would qualify. No, he would not qualify. A burglar would not qualify. Because a burglar, because under F.2, a burglar would not be a person residing in the rented dwelling, and he would not be a person associated with the person in the rented dwelling. What about a squatter? That's an interesting point, Your Honor. Would a squatter be associated with a renter? In this case, whatever Santa Monica's view of Mr. Lawrence Salisbury's status was, it's undisputed that he was a person residing in the dwelling with his father, and that he was a person associated with his father. But let's talk about squatters, because I've given this a lot of thought. If Mr. Salisbury just climbed in the window of a mobile home park, and that was their position, you would expect that the City of Santa Monica would call the police and say, there's a squatter in this mobile home, please get him out. And then, if the police came and declined to arrest the squatter, the City of Santa Monica, I expect, would evict the squatter, and the question of his tenancy would be decided in the proper forum, which would be the Los Angeles Superior Court in Santa Monica specifically. The only court that has jurisdiction to decide the question of whether or not someone is unlawfully holding over a tenancy. That's where that has to be decided. If we were to conclude that it was an element of the federal statute that he had to have some right to the occupancy of the premises under state law, is it your position that we could not then proceed to decide that issue? Would we have to abstain, and a suit would be brought to the state court? What is your position? That is my position, your honor. My position is, first of all, this issue of whether someone... Did you make an abstention below? I did not, because I did not see it to be necessary. But, if I... The district court went ahead and decided the issue of whether or not he had a right to be in the property under state law, didn't it? The court did say that, but even if this case were tried to a court, and a unanimous jury in federal court decided that he had no right to the premises, after going home from the trial, losing, Mr. Salisbury would then still be an authorized occupant of the mobile home park. Because a federal court has absolutely no jurisdiction to decide the issue of whether a tenant is an authorized or unauthorized occupant. What case are you relying on in arguing that? Just a minute. I found it yesterday. It is a case involving an Indian reservation, your honor. It is All Mission Indian Housing Authority versus Magante, M-A-G-A-N-T-E. That is 526-F-1-1-1-2. The pinpoint site would start at 1-1-1-4. It is a 2007 case out of the Southern District of California. That was a very interesting case, your honor. Because the landlord took the position that because of the fact that this involved a housing authority that presided over an Indian reservation, that it would have no way to evict the defendants but for in federal court. That court found that it had no jurisdiction and it searched for it. It even recognized the plaintiff says they are without a remedy if I don't grant an order of eviction and have the marshals come and evict the defendants. Respectfully to the housing authority, I can't do it because I lack jurisdiction. It is nowhere in the federal law that I, sitting as a district court judge, can evict. And it found there is no federal common law right of eviction. It just doesn't exist. Furthermore, if I move to city law, the fact that Mr. Salisbury had lived with his father for a year and no one disputed that means that he could not have been evicted under city law. But the proper forum to decide that is definitely eviction court. Not federal court. It has no jurisdiction to decide that question at all. But there is a more fundamental reason why the district court can't make that decision, your honor. Because it is not an element of the claim. The elements of the claim are that the plaintiff is handicapped, the defendant knew of the handicap, the accommodation may be necessary, the accommodation is reasonable, and that the defendant refused to make that accommodation. That's where the inquiry ends. Now you can look at this Fair Housing Amendments Act and see that Mr. Lawrence Salisbury was definitely a person associated with that person, a renter, under everyone's facts that we agreed upon. And that the landlord refused to make any accommodations reasonable, necessary, or unnecessary. I'd certainly like to reserve some time to talk about the interactive process if it's important for your honors to hear that. Would I be permitted to go on? Your time is yours. You have to watch the clock and determine what amount you want to preserve for rebuttal. Well, I would think I would like to preserve three minutes for rebuttal, which means I had better stop now, your honor. Okay, all right. Then we'll hear now from Ms. Hugard. Did I pronounce that correctly? You did, your honor. Good morning, your honors. Deputy City Attorney Michelle Hugard for the City of Santa Monica. And may it please the court, the district court's ruling in this case was limited and it was appropriate given the unique facts of the case. And the granting of the City's motion for summary judgment on the sole cause of action for violations of their Housing Act should be affirmed. The City's decision not to grant the specific parking accommodation at issue was based simply on the fact that parking spaces in this affordable housing park were only for authorized residents, tenants, or their guests. And at the time the appellant made the request, and as noted in the City's letter to the appellant two and a half weeks before the request was made, he was none of these things based on what was known to the City at the time the request was made. And this is based upon the evidence that the appellant fails to mention in the papers. And that evidence includes admissions from his father, declaring under penalty of perjury in 1988, in 1990, in 2000, in 2005, that the father was the only occupant in the mobile home park. Let me just stop you. The district court had a peculiar paragraph at the end of its order where, you know, having said basically that, gone through all the state law issues and said that he didn't have a right to be there, it then says the court's decision is a narrow one. It cannot adjudicate the unlawful eviction case dismissed by the state court, nor does it resolve whether the City could have successfully brought an unlawful detainer action. Isn't that exactly what he did? I mean, wouldn't his findings be preclusive of those issues? Isn't he taking on that role, and is that appropriate? I don't believe so, Your Honor. In these reasonable accommodations cases, and again, this is a reasonable accommodation under the Fair Housing Act, the court can consider whether the accommodations request is reasonable based on whether it would constitute a fundamental alteration of a housing provider's policies. Have they ever, in the guise of that, can you point to another case in which a federal court, in the guise of deciding what constitutes a reasonable accommodation, has essentially decided a state real property possession issue? Well, Your Honor, I don't have a case directly on point, but I do want to point to the Williams case out of New York. That is actually a little bit different, but of all of the cases that are cited in any of the briefs, it's the most on point with what happened in this particular case. In Williams, there was a gentleman who lived as a minor with his parents in public housing. The housing authority had records that he moved out at another time and then attempted to move back in with his mother. His mother passes, and he attempts to establish the ability to remain in the public housing unit. In that case, the court noted that the specific request for reasonable accommodation, which again is what's at issue in this case, was denied not based on a disability, but it was denied on the failure of the individual to become a lawful occupant of that public housing unit, In that case, the court noted that the housing authority has a legitimate interest in making its housing stock available to the people who are able to qualify for the requirements. And again, we're dealing with affordable housing in this case, just as in the Williams case, where it's limited in capacity. So the housing authority, just like the city, has a reasonable, legitimate reason in making the stock available to people who qualify and who demonstrate an interest to comply with the rules and regulations. While not directly on point, the Williams case does deal with an issue of an unlawful occupancy and how it relates to a request for an accommodation by a non-tenant. What's your response to your opposing counsel's assertion that abstention principles would apply to the adjudication by a federal court of a right to possess property under state law? Well, Your Honor, I would argue that in this particular case, the court doesn't have to make that decision. Again, these accommodations requests are a case-by-case situation, and based on the specific facts of this case, the city's reason to not grant the accommodation was based on what was known to the city at that particular time. So you're saying it doesn't matter whether or not he had a right of lawful possession? No, Your Honor, I do believe it does matter. And the federal court has to decide that issue then? I don't think that the court has to make that decision in every case. In this particular case, yes. In this particular case, the facts demonstrate, and this is again based on the facts and the evidence presented by the lower court, that the city did not grant the accommodations request because of the evidence that was submitted to the city and what the city had in terms of the admissions from his father, the additional plaintiff appellate himself, that he lived at locations outside of the park. And those admissions are in the record, and they were considered by the district court. It also included, and I can cite specifically to the record, the admissions from the father from the 1980s to the 2000s, also admissions from his father in 2011 that the son, Mr. Salisbury Appellant, had not moved into the unit. So all of these things are important to the specific facts to this specific case. So moving on, and I just said it, but I'd like to reiterate, the specific accommodations request at issue in this case was not granted simply because he was not, in the city's views, an authorized tenant based on the abundance of written records. Let me ask you one question. When you say he was not an authorized tenant, are you saying he was not authorized by the rules and regulations of the city of Santa Monica or by the law of California as to possession of property? I would say it's to both. Under the rules and regulations of the specific… In order to maintain your judgment, do you have to make it out under both rules? He wasn't qualified in the city of Santa Monica, and California law did not give him the right of possession? Yes, Your Honor. In this case, I would say that that's the case. And I would like to… Do you have to have both, or do you have to just make it with one, say, city of Santa Monica, not the law of California? I would say it's based upon the rules and regulations of the housing provider. So it would be the city of Santa Monica. So we can decide, the judge below can decide the case, and we can affirm his judgment if he was correct about the city of Santa Monica rules regarding application, regardless whether Mr. Salisbury has any common law or statutory rules under California law to occupy the space. I would argue in this case, yes. And I would say that in this case, he had rights to neither under the city's reasonable rules and regulations of the park, under the right control provisions that Mrs. Campbell has stated. And I will address that specific point for the court, because I do think it's been jumbled. That point was not made in the summary judgment motions and below, and so the record wasn't completely developed, but we did address it in our opposition. Rent control provisions and affordable housing are different provisions. And in fact, our municipal code says that a rent control unit can qualify for affordable housing if the additional affordable housing requirements are met. So yes, under the reasonable rules and regulations of the park. Yes, under the municipal code. And yes, under the California code. He was not a state code. He was not an authorized tenant. And I will say that, you know, tenancy does not have to be expressed, as Mrs. Campbell has pointed out. It can also be implied. But nothing in terms of city's actions here, and especially with the timing of the accommodations request that we've made, did the city allow an implied tenancy. In fact, the city continued to assert its rights. The city, you know, filed the 60-day notice to quit. The city was a defendant in the unlawful eviction case, which went from 2013 to 2015. As soon as that case was over, the city and its management company notified Mr. Salisbury that he was not an authorized tenant and he could not park anywhere in the park. And a mere two and a half weeks after that is when this accommodations request occurred. Did the city ever accept rent from Mr. Salisbury? No, the city did not. And that's a part of the record. The city never accepted rent. The city internally viewed him to be in violation for the entirety of the city owned the park where Mr. Salisbury was an issue. That's also in the record. And just going back to what's at issue in this particular case, what's at issue is whether the city had to grant Mr. Salisbury an accommodation and whether a failure to grant the parking accommodation constituted a violation of the Fair Housing Act. So I implore this court to look at the evidence presented in this case. I also want to address a specific point made by the appellant, and that's that Mr. Salisbury testified in a deposition many years after the events of this case that he had lived continuously in the park for 20 years. And I do want to bring you back to the fact that that does not negate the city's legitimate reasons for not granting the accommodation at the time the accommodations request was made. Appellant cannot dispute that his father repeatedly said that the father was the only occupant. He cannot dispute that his father said in 1990 that Mr. Salisbury lived at an address on Sunset Boulevard. He can't dispute that in 2011... But don't we on summary judgment, don't we have to take as true his assertion that he did? I mean, you've got great evidence pointing out that he may be not telling the truth on that, but don't we on summary judgment have to take his version of that as true? Not necessarily, and I actually would say no, Your Honor, because the reason why an accommodations request was disputed is based on the fact that it was a fundamental alteration to the city's policies and procedures at the time the request was made. So again, looking at the evidence known to the city at the time the request was made, the statements by his father in 2011, the appellant had not moved in yet, but he was making sure that the bills were being paid on time. Appellant's own statements in his application, his 2011 application, where he stated that he lived at an address outside the park, he stated he lived in his mother's address and that he had lived there since 1962. He also states in that application that he currently lived with his mother and that he had moved out of his father's home to take care of his mother and he was hoping to now move back in to take care of his father. Also in that 2011 application, he submitted records with a completely different address in Gardena. So this information, what was known to the city at the time to allow the accommodations request would essentially create a fundamental alteration to the policies and procedures of the affordable housing park. To allow the sort of accommodation and then the tenancy that appellant is requesting would essentially allow individuals to bypass the affordable housing restrictions and allow for somebody who doesn't qualify, who doesn't demonstrate a willingness to comply with the rules and regulations, to potentially displace individuals who do qualify and who are willing to demonstrate a willingness to comply. With the rules and regulations of an affordable housing park. That point was specifically noted by the Williams court in the Williams case out of New York. And then I did want to add one additional point. Although we don't have in this circuit exactly analogous facts, we do have the case of U.S. versus California Global Home Park Association. And in that case, it rebuts the appellant's statement that anybody who's associated with anybody who's a tenant in the park is entitled to an accommodation. In fact, in that case, this court, the Ninth Circuit, held that an accommodations request for a third-party parking accommodation, a fee waiver, was not reasonable or necessary to afford the tenant the use and enjoyment of the property under the Fair Housing Act. And in that case, this court said that the parking accommodation request, that issue, was not related to the disability. It was related to a third party who was not a tenant in the park. So on that, your honors, unless the court has any additional questions, I would just... Can you explain that case that you were just citing? Sure, your honors. It is U.S. versus California Global Home Park Management Co. It's the 1997 case, 107F3RD1374. Say it again. I'm sorry. Say it again. The citation, it's the 1997 case, citation 107F3RD1374. It's cited in our papers. And I think that case is important. There's a previous case out of 94 where the court denied a motion to dismiss and said, we can't make a statement that the specific accommodations request can never be granted, but implored the court to get specific evidence. And in the 97 case, the court did evaluate that evidence and found reasonable accommodation was not needed. Thank you, your honor. Thank you, counsel. I don't have much time. Okay, there's a time for rebuttal. All right, so you may proceed, Ms. Campbell. Thank you. With regard to the Williams case, which did involve someone who they said was not authorized to reside. In that case, Mr. Williams had moved into his mother's house in the housing authority and sought to be included in that household. And that was adjudicated administratively and on appeal from the administrative decision. Then later, they evicted Mr. Williams. And Mr. Williams stipulated to being evicted in state court. And then after he was evicted, he sued for violation of the FHAA saying that they should give him this apartment as an accommodation of his disability. And the district court said this, well, we can't do that because to do that, the housing authority would have to violate federal law in order to comply with federal law. So we're going to find that you don't make it on the reasonableness element of the claim. You see, Mr. Williams' case is nothing like this. Because Mr. Williams' right to reside in there was adjudicated in state court and administratively prior to his lawsuit. Your Honor, it's important to note that even a tenant who is currently being evicted, who has an eviction trial two weeks away and breaks his leg, is allowed under federal law to say to his landlord, I need to park close to the front door for these next two weeks at least because I have a broken leg. And the landlord, if he can do it, has to grant that accommodation while the dispute regarding his tenancy is being adjudicated in the proper forum, which is state court. Here the city of Santa Monica took no steps to evict Mr. Salisbury. Notwithstanding Ms. Hughard's reference to an unlawful eviction case. Going back to the squatter then, so while they're trying to evict the squatter, if the squatter breaks his leg, then he can insist while the case is going through the state courts, he can insist on an accommodation during that time? Your Honor, I would say that if the squatter was not a person that was removed by the police, the answer would have to be yes, because that is the proper forum for adjudicating that particular dispute. I would guess that that squatter, as we're calling him now, would have counsel in the state court eviction action who would be disputing that, that he was a squatter. So when we use the word squatter, unfortunately we imply a foregone conclusion. But if the squatter is not removed by law enforcement and is asserting a right to tenancy, that has to be determined in the state court. What do you say to the argument that this is an affordable housing establishment and the city of Santa Monica has a procedure or application to determine whether the person occupying the space is indeed entitled to affordable housing? If Mr. Salisbury were a multimillionaire, he might not qualify. Don't they have the right to keep people out who don't qualify? They have a right not to rent to people who don't qualify, but they do not have the right to eat. They didn't rent to Mr. Salisbury. If I may, Your Honor, Mr. Salisbury, remember, has been there since 1974, at least according to our evidence. Does he qualify for affordable housing? Well, yes, he does and did, but I'm sorry, that's not in the record, but it is a fact. My question is, did he ever apply and go through the regulations and fill out the forms to show that he was entitled to affordable housing consideration? The regulatory agreement specifically exempts people who are in the park at the time the regulatory agreement was entered into, Your Honor. Nothing about a contract between the city of Santa Monica and a third party changes the fact that the people who were there before they entered into that agreement still have the right of tenancy. The regulatory agreement itself exempted Mr. Salisbury from having to income qualify, notwithstanding the fact that he probably could have. All right, thank you, Counselor. I'd like you to go a little bit over. We appreciate the arguments this morning and the case just argued will be submitted. Thank you, Your Honors. Thank you for your consideration.
judges: Bea, Thapar, Collins